[Cite as *State v. Kuhar*, 2012-Ohio-1622.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25928 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TIMOTHY E. KUHAR | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 01 0013 |

DECISION AND JOURNAL ENTRY

Dated: April 11, 2012

BELFANCE, Judge.

{¶1}  Defendant-Appellant Timothy Kuhar appeals from his convictions in the Summit County Court of Common Pleas.  For the reasons set forth below, we affirm.

I.

{¶2}  Mr. Kuhar was indicted in January 2011, on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the third degree and one count of domestic violence in violation of R.C. 2919.25(C), a misdemeanor of the first degree.  In March 2011, a supplemental indictment was filed charging Mr. Kuhar with one count of violating a protection order in violation of R.C. 2919.27, a misdemeanor of the first degree.

{¶3}  The matter proceeded to a jury trial and a jury found Mr. Kuhar guilty of the charges.  Mr. Kuhar was sentenced to a total of three years in prison.  Mr. Kuhar has appealed, raising two assignments of error for our review, which we have rearranged to facilitate our review.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT OVERRULED A TIMELY DEFENSE
MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AS
THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BY THE STATE
OF OHIO TO ESTABLISH A PRIMA FACIE CASE OF DOMESTIC
VIOLENCE TO WARRANT THE CASE BEING SUBMITTED TO THE JURY.

{¶4} Mr. Kuhar asserts in his second assignment of error that his conviction for domestic violence was based upon insufficient evidence as the State failed to prove that Mr. Kuhar "'knowingly cause[d] or attempt[ed] to cause physical harm[,]'" thus requiring the trial court to grant Mr. Kuhar's Crim.R. 29 motion.

{¶5} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. No. 24769, 2010-Ohio-634, ¶ 33. *See also State v. Morris*, 9th Dist. No. 25519, 2011–Ohio–6594, ¶ 12. In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶6} We note that Mr. Kuhar was convicted of two counts of domestic violence, only one of which contains the element that the defendant knowingly cause or attempt to cause physical harm. *See* R.C. 2919.25(A). Thus, we focus on Mr. Kuhar's conviction for violating

R.C. 2919.25(A). R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Mr. Kuhar concedes that the victim was a "family or household member[;]" in addition, Mr. Kuhar stipulated to his prior domestic violence convictions. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶7} Mr. Kuhar and the victim had a longstanding, tumultuous relationship and had been living together as a couple for several years. At the time Mr. Kuhar and the victim lived in a house with Brian Nemchev, who subleased space to them. Mr. Kuhar's charges stem from an incident that took place on January 2, 2011.

{¶8} Officer Charles Artis, an officer with the Akron Police Department, testified that he responded to a domestic violence call on January 2, 2011, at approximately 11 pm. Officer Artis spoke with the victim. He testified that the victim was "scared[]" and "appeared shaken up." She relayed the following to Officer Artis:

> She said that she and her live-in boyfriend, Mr. Kuhar, had gotten in an argument over her medication. She told me she had several prescription medications that she just got filled that day and he'd been arguing with her all day asking her if he could have some of her prescription medications.
>
> She said at that time right before the argument she had been in her bedroom where she locked herself in and hid her medications from him. She had to use the restroom. She thought he was leaving, so when she came back, he was in her room looking for her medication. She said they got into an argument. He got upset when she wouldn't let him have any and he grabbed her and threw her down. At that point she said that's when she began screaming for help. * * *
>
> She said they continued to argue a little bit more, but then said he threatened to kill her, he spit in her face.

{¶9} Officer Artis further testified that, while the victim did not have any visible injuries, she did complain that her back hurt. The victim signed charges against Mr. Kuhar, stating that she "was tired of being [Mr. Kuhar's] punching bag." In addition, she completed a statement in which she asserted that Mr. Kuhar picked her up by her neck and threw her across the room and that he slapped her and spit on her.

{¶10} Based on the foregoing testimony, we conclude that the trial court did not err in overruling Mr. Kuhar's Crim.R. 29 motion. The State presented sufficient evidence that, at the very least, Mr. Kuhar knowingly attempted to cause the victim physical harm. Accordingly, we overrule Mr. Kuhar's second assignment of error.

## ASSIGNMENT OF ERROR I

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE CRIME OF DOMESTIC VIOLENCE BEYOND A REASONABLE DOUBT.

{¶11} Mr. Kuhar asserts in his first assignment of error that his conviction for domestic violence is against the manifest weight of the evidence. Again, Mr. Kuhar only appears to challenge his conviction for violating R.C. 2919.25(A), which was discussed above. Essentially, Mr. Kuhar asserts that the victim is not credible and, therefore, his conviction for domestic violence is against the manifest weight of the evidence. We do not agree.

{¶12} In reviewing a challenge to the weight of the evidence, the appellate court:

[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶13} In light of all the evidence, we cannot say the jury was unreasonable in believing the victim's statements to police, her 911 call, and various voice mails she left, as opposed to her testimony at trial. The victim, who was ultimately called as a court's witness, was very uncooperative and argumentative at trial, sometimes refusing to answer questions and once stating that she hated the prosecuting attorney. It is clear from her testimony that she still loved Mr. Kuhar and did not want him to go to prison. During most of the prosecutor's questions the victim stated that she did not remember the events of that day. She claimed that she was heavily medicated when she wrote her statement to police as she suffers from seizures, multiple sclerosis, and dementia and takes approximately ten different medications a day. She further claimed that Mr. Kuhar was only trying to keep her from overmedicating herself, that he did not harm her, and that she did not want him prosecuted. However, the victim's 911 call to police, her oral and written statements to the police, and several voice mails she left, paint a different picture; cumulatively those evidentiary materials indicate that Mr. Kuhar did throw, slap, threaten, and spit on the victim, that he had assaulted her in the past, and that the victim was tired of Mr. Kuhar' physical assaults against her.

{¶14} We note that, in voice mails the victim left following the incident in question, the victim continued to maintain that Mr. Kuhar assaulted her and that he had done so in the past. In addition, she expressed both her desire that Mr. Kuhar remain in jail and her unhappiness with the punishments Mr. Kuhar had received in the past. Thus, despite the victim's assertions at trial that she did not remember the events and had difficulty with her short-term memory, the voice mails indicate otherwise, and are consistent with the statements the victim made to the police. Moreover, Officer Artis who has special training in dealing with people with mental illnesses testified that there was nothing about his interactions with the victim that indicated to him that

the victim suffered from dementia. Officer Artis testified that, the night of the incident, the victim did not appear to have any trouble remembering the details of what occurred.

{¶15} Mr. Kuhar testified in his own defense. He stated that he met the victim at a time prior to the development of her health issues when she was working as a nurse. The victim stopped working as a nurse after she began having seizures. Mr. Kuhar testified that the victim's memory began deteriorating and he began dispensing her medication for her. He agreed that he and the victim have had a tumultuous relationship and admitted to prior incidents of domestic violence. He indicated that the victim's memory problems have worsened over time and that she would sometimes forget whether she had taken her medication or not. On the day in question, Mr. Kuhar testified that he was watching TV and went to check on the victim and found her asleep in an odd position. He was concerned and woke her up. She then began asking for her medications. Mr. Kuhar explained that she had already taken them and went downstairs. According to Mr. Kuhar, the victim came downstairs, demanded her medication and hit Mr. Kuhar with a tray when he failed to comply. She went back upstairs and continued to demand her medication. Mr. Kuhar followed the victim upstairs, put the medications back in her purse and told her he was not going to give the medications to her. Mr. Kuhar then proceeded back downstairs. Mr. Kuhar testified the victim came downstairs and hit him with the tray again, then went back upstairs and called police. Mr. Kuhar denied assaulting the victim. While it is true that Mr. Kuhar had a few injuries to his face that he asserts were from the victim hitting him with the tray, the officers who responded to the call testified that the injuries appeared to be older and did not appear to be from the incident at issue. Moreover, there is at least a suggestion in one of Mr. Kuhar's jailhouse phone calls with the victim that he wanted the victim to blame Mr. Nemchev for the incident as opposed to himself.

**{¶16}** Thus, the jury was confronted with conflicting testimony. After a thorough review of the record, we cannot say that its resolution and credibility determinations were unreasonable or created a manifest miscarriage of justice. It was not unreasonable for the jury to conclude that the victim's statements to police on the day of the incident were accurate and truthful and that her testimony at trial was not. It was obvious that the victim did not want to testify and that she did not want to see Mr. Kuhar go to prison; thus, the jury's reluctance to believe either that the victim did not remember the events of January 2, 2011, or that Mr. Kuhar did not harm her or try to harm her is not unreasonable. Moreover, we cannot say the jury was unreasonable in disbelieving Mr. Kuhar's version of events. We note that Mr. Nemchev testified that he heard "some indistinctive arguing, yelling, and a couple loud thumps on the floor," and at some point the victim yelled for help. The jury could have reasonably concluded that Mr. Nemchev's testimony supported the victim's statement to the police, at least more so than Mr. Kuhar's version of events in which he asserts a complete lack of physical violence on his part. In addition, it would not be unreasonable for the jury to have questioned Mr. Kuhar's credibility given the number of jailhouse calls between himself and the victim; between January 12, 2011, to February 23, 2011, Mr. Kuhar spoke with the victim from jail 26 times. Given the number of times the two spoke, and the fact that Mr. Kuhar attempted to conceal the calls through the use of another inmate's pin number, the jury could have reasonably inferred that Mr. Kuhar was attempting to influence the victim and her testimony. Accordingly, we conclude that Mr. Kuhar's conviction for domestic violence is not against the manifest weight of the evidence.

III.

**{¶17}** In light of the foregoing, we overrule Mr. Kuhar's assignments of error and affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.